[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff leased a vehicle to the defendant in July of 1989. The defendant was regularly late with his monthly payments and then in May of 1991, his payments stopped. The parties don't agree on the date, but the vehicle was returned by the defendant and apparently the parties attempted to negotiate a new lease calling for lower payments. This lease was never executed because of the defendant's credit rating.
The defendant takes the position that upon his surrender of the car, the parties entered into an agreement whereby the defendant was to pay only the payments in arrears. This theory is supported by correspondence between the parties, especially Exhibit 4 dated November 14, 1991. The plaintiff argues that this correspondence dealt only with the late payments, and that the unpaid installments were to be handled subsequently. The plaintiff's evidence on this point is confusing, particularly in view of Exhibit 4 and two letters, Exhibits C and 6. In the former, dated April 3, 1992, the plaintiff seeks a balance of $13,166.00, including $2300.00 in delinquent payments "through October 1991." This is apparently the same $2300.00 referred to in Exhibit 4, but it is now only a portion of the claim. On April 10, 1992, a collection agency wrote to the defendant demanding $3,072.00. This agency also wrote the defendant on December 16, 1991 demanding $3072.00 and February 21, demanding $1772.28.
Thus, the defendant has shed considerable doubt on the plaintiff's claim for damages in the amount of the unpaid installments whatever that might be. Plaintiff's counsel argues it is derived from 22 installments running from October 1991 to the end of me lease term, July 1994. This totals $12,034.00. This CT Page 7749 is not the amount claimed by the plaintiff in Exhibit C, referred to above. In Exhibit C, the plaintiff arrives at the defendant's indebtedness by deducting from his balance due a credit of $10,500.00 for "Best offer received." This item was never explained, but contradicts the plaintiffs earlier testimony that after the car in question was returned to the plaintiff, it was leased again at $500.00 a month. No evidence was offered as to the term of that lease, so the court has no idea what the plaintiff received from that transaction and thus what the defendant's credit should be. It should be noted that the plaintiff had stated on the record that the defendant "gave the plaintiff a credit of $12,000." Applying this $12,000.00 toward counsel's computation of 22 installments would leave a debt of $34.00.
The court has taken the time and trouble to detail the figures and exhibits because the court feels that what probably happened is that the plaintiff agreed to accept the missed payments up to the date of the return of the car, conditioned on the execution of a new lease. When the new lease deal fell through, it reverted to the original position of demanding payment in full. Unfortunately, the contradictory messages it sent (explained to the court as the product of our modern computer world) were never examined by anyone. And, amazingly, the plaintiff could not present evidence in the form of business records, memos, receipts, or other documents to show what transpired after the car was returned. In fact, it had no record of when the car was returned. The second lease of the car in question is unexplained as is "Best offer received."
In conclusion, the plaintiff could well have and probably does have some money coming from the defendant. However, it has not sustained its burden of proving what that amount is and the court cannot speculate as to what it might be.
Judgment may enter for the defendant on the complaint and for the plaintiff on the counterclaim, no evidence having been offered to support it by the defendant.
Anthony V. DeMayo Judge Trial Referee CT Page 7750